WALLACE G. AND CAROLYN D. ROBERTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roberts v. Commissioner
Docket No. 30436-84.
United States Tax Court
T.C. Memo 1987-404; 1987 Tax Ct. Memo LEXIS 401; 54 T.C.M. (CCH) 143; T.C.M. (RIA) 87404; August 18, 1987. *401 Held: On the facts, petitioners were not engaged in the business of farming for profit during the years in issue and are not entitled to deductions for farm losses. Held, further: Petitioners are not liable for additions to tax for negligence under section 6653(a) for either 1979 or 1980. Tom Bottroff, for the petitioners. Gary F. Walker, for the respondent DRENNAN MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Income Tax
Additions to Tax
Year
Deficiency
Section 6653(a) [1]
1979
$ 3,251.38
$ 162.57
1980
5,741.01
287.05
After concessions, [2] *402 the issues for decision are: (1) whether petitioners are entitled to farm losses claimed in 1979 and 1980 in the amounts of $ 17,318.88 and $ 12,360.94, respectively; and (2) whether petitioners are liable for the addition to tax for negligence provided in section 6653(a) for 1979 and 1980. FINDINGS OF FACT Petitioners Wallace G. Roberts (Wallace) and Carolyn D. Roberts were married and had their legal address in Greenbrier, Tennessee at the tie they filed their petition in this case. Petitioners filed their joint Federal income tax returns for taxable years 1979 and 1980 with the Internal Revenue Service Center in Memphis, Tennessee. In 1973, petitioners acquired a 73.85 acre tract of land and had a 1,200 square foot home constructed on the site. Petitioners fenced off 14 acres as a "yard" in front of their home. By installing additional fencing, this acreage could otherwise have been used as pasture or crop land. An additional 14 acres was from time *403 to time used as pasture land, 3 acres was designated as a "hog lot" and the remaining approximately 42.85 acres was laden with rocks and/or consisted of steep wooded slopes cluttered with loose broken timber. No tobacco was grown on the property. [3]
When petitioners acquired the property in 1973, they had no prior experience as farmers, although Wallace spent an unspecified number of summer vacations on his grandfather's farm as a young child. Wallace was employed full-time as an engineer with the DuPont Company. He worked on his property after his regular work hours and on weekends and summer vacations. During 1973 through 1976 petitioners maintained a small cattle herd consisting of approximately 9 to 25 cows and one or two steers. During 1976 and 1977 petitioners maintained a small herd of hogs consisting of approximately 10 pigs and 50 piglets. [4] Petitioners never calculated how much income was needed from the cattle and hog operations to realize a profit from these activities. Petitioners ceased cattle raising activities in 1976 and ceased *404 hog raising activities in 1977. They claimed farm losses of $ 16,089.83 and $ 9,312.86 on their joint Federal income tax returns for 1976 and 1977, respectively. Petitioners raised no livestock in 1978, 1979 and 1980, thereby realizing no income from livestock in those years. In November of 1978, petitioners sold their house together with the 14 acre yard and the 3 acre hog lot. In 1979, petitioners recovered possession of the house and land when the buyers defaulted on their payment obligations. Petitioners did not plant hay or any other crop in 1979 or 1980. In 1980, petitioners attempted to harvest 10 to 12 acres of orchard grass, fescue and clover, but did not do so because of equipment failure and an ensuing drought. [5] *405 If petitioners had harvested the grass, it would have generated no more than approximately $ 600 in gross income. [6] Petitioners did not try to determine whether sale of the grass would have generated profits in excess of expenses associated therewith. In 1979 and 1980, petitioners repaired fences and cleared some of the land of broken timber. During 1979 and 1980, petitioners engaged in no livestock operations nor did they attempt to plant any crops on their property. Accordingly, in 1979 and 1980, petitioners realized no gross income from any farming activities. In connection with the alleged farming activity, petitioners claimed the following income, expenses and net losses on their Federal income tax returns for 1979 and 1980: 1979
1980
Gross Income
-0-
-0-
Labor
$ 2,025.00 $ 145.00 Repairs
2,315.99 1,164.77 Interest
2,287.27 2,605.18 Supplies
1,535.67 1,223.40 Gasoline
300.00 550.00 Taxes
628.74 175.00 Insurance
410.00 Insurance (Farm truck)
455.00 Farm survey
850.00 Truck tags
45.00 Depreciation
7,823.22 5,197.59 (Math error)
(7.00)
(50.00)
Farming Loss Claimed
$ 17,318.89 $ 12,360.94  Respondent determined that petitioners' farming activity was not entered into for profit *406 and/or that the claimed amounts did not represent ordinary and necessary business expenses associated therewith. [7] Respondent disallowed all of the above losses. OPIONION Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. However, section 183 limits the availability of these deductions if the activity is not engaged in for profit. Section 183(a) provides the general rule that, in the case of an activity not engaged in for profit, no deduction attributable to such activity shall be allowed except as provided in section 183(b). Section 183(b)(1) provides that there shall be allowed those deductions that would be allowable without regard to whether the activity is engaged in for profit; and section 183(b)(2) allows a deduction equal to the amount of the deductions that would be allowable for the taxable year if such activity were engaged in for profit but only to the extent that the gross income derived from the activity exceeds the deductions allowable under section 183(b)(1) [8] *407 Whether petitioners' farm activity was engaged in for profit depends on whether they engaged in the activity with an actual and honest objective of making a profit. Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Fuchs v. Commissioner,83 T.C. 79, 98 (1984); Dean v. Commissioner,83 TC. 56, 74 (1984). Petitioners' expectation of profit need not have been a reasonable one, but must have been bona fide. Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. without opinion 647 F.2d 170 (9th Cir. 1981). Profit objective is a question of fact to be determined from all of the facts and circumstances. Allen v. Commissioner,72 T.C. 28, 34 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Respondent's regulations set forth nine relevant factors to be considered in determining whether an activity is engaged in for profit. Section 1.183-2(b), Income Tax Regs. *408 [9] In deciding whether the requisite profit objective exists in any case, the presence of one, or even a majority of these factors is not determinative. Golanty v. Commissioner, supar; Benz v. Commissioner,63 T.C. 375 (1974). The burden of proof is on petitioners, Golanty v. Commissioner, supra at 426, with greater weight given to objective facts than to petitioners' mere statement of intent. Siegel v. Commissioner,78 T.C. 659, 699 (1982); Engdahl v. Commissioner, supra;section 1.183-2(a), Income Tax Regs. After reviewing the entire record we conclude that petitioners have not proven *409 that they operated their farm with the requisite profit objective. It is undisputed that during 1979 and 1980, the years in issue, the only farming-type activity conducted on the property consisted of clearing the land of fallen trees and brush. [10] Petitioners did not place the newly cleared acreage into the production of crops of livestock as they had done sporadically in previous years. Petitioners state, "This clearing was a long range project that was designed to increase productivity by making more pasture land and crop land available as well as to improve the appearance of the property. This effort did result in improving the property as we can tell from the profit that was made on the sale of the land when it was sold. [11] *410 Apparently, petitioners would have us include the profit realized by appreciation in the real property when determining petitioners' profit objective in operating the farm. Section 1.183-2(b)(4), Income Tax Regs. states as follows: (4) Expectation that assets used in activity may appreciate in value. The term "profit" encompasses appreciation in the value of assets, such as land, used in the activity. Thus, the taxpayer may intend *411 to derive a profit from the operation of the activity and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized since income from the activity together with appreciation in land will exceed expenses of operation. See, however, paragraph (d) of section 1.183-1 for definition of an activity in this connection. According to the cross-referenced section 1.183-1(d)(1), Income Tax Regs., the holding of land primarily for its appreciation in value and a farming activity may, under certain circumstances, be considered a single activity for purposes of section 183, but only if the farming activity for purposes of section 183, but only if the farming activity reduces the net cost of carrying the land for its appreciation in value. (d) Activity Defined--(1) Ascertainment of Activity. * * * Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net *412 cost of carrying the land for its appreciation in value. Thus, the farming and the holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land (that is, deductions other than those directly attributable to the holding of the land such as interest on a mortgage secured by the land, annual property taxes attributable to the land and improvements, and depreciation of improvements to the land.) It is undisputed that for the years in issue the expenses (apart from depreciation of improvements) directly attributable to the farming activity substantially exceeded the farm income. Indeed, no farm income was produced whatsoever during the years in issue. Thus, petitioners do not satisfy the test set forth in section 1.183-1(d) for combining their farming activity and their investment activity into a single profit motivated activity. We therefore conclude that no profit was derived from the farming activity during the years in issue. Petitioners' alleged farming activities were historically unprofitable. Wallace testified that during *413 taxable years 1973 through 1978 petitioners realized some income from their farming operations, but that expenses exceeded income in each of those years. Accordingly, petitioners' farm has never produced any profit from farming operations. While not controlling, petitioners' failure to show evidence of any profit is certainly a damaging factor favoring a conclusion that they did not engage in farming for profit in the years in issue. Petitioners failed to demonstrate that the manner in which they conducted the farming operations was reasonably calculated to produce a profitable return. Petitioners were not experienced farmers. They failed to demonstrate that Wallace's summers on his grandfather's farm endowed him with sufficient knowledge to successfully operate a farm. Neither did petitioners establish that they sought the advice of competent consultants or experts. [12] *414 There is scant evidence to suggest that petitioners operated their farm with a concern for profitability. At trial, Wallace testified that he did not analyze the profit from the sale of cattle raised on his farm, neither did he analyze the profitability of the other activities conducted on the farm. It appears that living on a farm provided petitioners with some degree of personal pleasure. Wallace testified that he "always kind of liked that type of life." This element of personal pleasure perhaps explains why petitioners did not attempt to determine the amount of profit, if any, which might reasonably result from their activities. It might also explain why 14 acres of suitable farm land was used by petitioners not for farming but as a front yard to their home. In light of the foregoing, we conclude that petitioners failed to prove that they engaged in farming activities with the requisite profit objective. Accordingly, expenses associated with the activity do not qualify as farm losses under section 162. Furthermore, because no income was derived from the activity, no deduction *415 is allowed with respect thereto under section 183(b)(2). [13] The next issue for decision is whether petitioners are liable for the addition to tax for negligence provided in section 6653(a). The manner in which respondent asserts additions to tax in this case is rather remarkable and merits elaboration. In respondent's statutory notice of deficiency a negligence addition pursuant to section 6653(a) was determined against petitioners in the amounts of $ 162.57 in 1979 and $ 287.05 in 1980. In their petition, petitioners disputed both the deficiencies in tax and the additions for negligence. For some unexplained reason, in respondent's opening statement at trial held May 19, 1986 respondent sought for the first time to impose damages against petitioners under section 6673. Respondent failed *416 to address either the negligence addition under section 6653(a) or damages under section 6673 when presenting his case at trial. In their brief, petitioners argued against imposition of the section 6673 damages but failed to mention the negligence addition under section 6653(a). In respondent's opening brief, respondent failed to mention the section 6673 damages but argued in favor of the addition under section 6653(a) for negligence. In respondent's reply brief, respondent then abandoned his position under section 6673 but failed to mention section 6653(a). The Court is thus left wondering what additions and/or damages respondent finally intended to impose. We find respondent's treatment of the additions to tax in this case both confusing and careless. Under these circumstances we would be inclined to decide the negligence issue in petitioners' favor on procedural grounds even if respondent had presented a persuasive case of petitioners' negligence. However, we need not consider respondent's procedural errors. We find no facts in this case which would support a finding of negligence under section 6653(a). Finally, respondent's indefinite request for damages, to the extent *417 it has not been abandoned, is clearly unwarranted. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners are deemed to have conceded, under Rule 34(b)(4), respondent's determination of $ 6,554.03 of section 1245 income and $ 343.22 of capital gain income, both occurring in 1979. In his statutory notice of deficiency, respondent determined that petitioners realized capital gain income of $ 6,522.09 in 1980 from the sale of a 14.35 acre tract of land, which respondent conceded on brief. Respondent further concedes the deductibility under section 183 of petitioners' Schedule F claims for taxes and interest, subject to substantiation of those expenses. 3. Wallace testified that tobacco could not be grown on the property because it lacked a "tobacco base." No further explanation was given. ↩
4. It is not known whether the aforementioned cattle and hog herds were maintained consistently during the years mentioned. ↩
5. It is unknown whether the orchard grass, fescue and clover were planted by petitioners at any time when they were in possession of the property or, if it was planted by a previous owner. 6. Wallace testified that he would have derived between 300 and 400 bales of "hay" from the grass mixture and that each bale would have sold in 1980 for approximately $ 1.50. ↩
7. Due to our holding, we need not consider whether the expenses were ordinary and necessary. ↩
8. An "activity not engaged in for profit" is "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Section 183(c). 9. The nine factors are: (1) the manner in which the taxpayer carries on an activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. ↩
10. In 1980 petitioners were unsuccessful in attempting to harvest "hay" when a borrowed bailer broke in the process. ↩
11. The mere clearing of land is not necessarily by itself a farming activity. When done preparatory to planting crops or raising livestock, such activity normally is considered part of the farming process. However, when done preparatory to construction or some other improvement of the land, such activity normally is considered part of the development activity. Sec. 182, repealed by sec. 402(a) Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2221, allowed a taxpayer engaged in the business of farming to elect to treat land clearing expenses as noncapital farming expenses. Apparently, petitioners made no such election. If we accept petitioners' testimony, their motives for clearing the land were mixed at best. If however we were to conclude petitioners' motives were exclusively improvement oriented, we might conclude that petitioners engaged in no farming activity during 1979 and 1980 for which deductions would be allowable. The record is incomplete with respect to petitioners' motives for clearing the land. Because of the nature of our decision herein, we need not address this issue. 12. Wallace testified in general about soil tests performed on this farm and a "second farm" purchased in May of 1981, a year not in issue. He also testified about conversations with "some of the guys (he) worked with" who had farms and a "county agent at the ASCS office." Petitioners failed to provide any information as to the advice given or whether the advice was incorporated into petitioners' farming operations. 13. Petitioners do not rely on sec. 182 (Repealed by sec. 402(a), TRA 1986, but effective for the years here involved) for deduction of any of their expenditures for the clearing of land to make it suitable for farming purposes, and we have given it no consideration. However, since we have concluded that petitioners were not in the business of farming, sec. 182 would not be applicable anyway. ↩